**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**GENERAL MOTORS CORPORATION,**

                                        **Plaintiff,**

        **v.**                                                **07-CV-141**

**DEALMAKER, LLC, d/b/a SEAWAY**
**CHEVROLET,**

                                **Defendant/**
                                **Counterclaimant/**
                                **Third-Party Plaintiff,**

        **v.**

**DAVIDSON CHEVROLET CADILLAC, INC.,**

                                **Third-Party Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                            **DECISION & ORDER**

**I.  INTRODUCTION**

        Plaintiff General Motors Corporation ("GM" or "Plaintiff") commenced this action

against one of their authorized dealerships, DealMaker, LLC, d/b/a Seaway Chevrolet

("Seaway" or "Defendant"), seeking a declaratory judgment that GM is within its

contractual rights to reject Seaway's proposed relocation request under the terms of the

Dealer Sales and Service Agreement ("Agreement").  See Compl., Ex. "A".  Defendant

1

filed an Answer, Counterclaim, Third-Party Complaint, and Jury Demand.

Seaway asserts seven causes of action in the Counterclaim against GM.  The First Count of the Counterclaim seeks a declaratory judgment that GM breached the Agreement. Def's Counterclaim at ¶¶ 41-45.  The Second Count of the Counterclaim alleges a violation of the federal Automobile Dealer's Day in Court Act, 15 U.S.C. §§ 1221-1226. Id. at ¶¶ 46-55.  The Third Count of the Counterclaim alleges violations of the New York Franchise Motor Vehicle Dealers Act, N.Y. Vehicle and Traffic Law, § 460 *et seq.*  Id. at ¶¶ 56-62.  The Fourth Count of the Counterclaim asserts a breach of contract claim. Id. at ¶¶ 63-71.  The Fifth Count of the Counterclaim asserts breach of the implied covenant of good faith and fair dealing. Id. at ¶¶ 72-77.  The Sixth Count of the Counterclaim asserts a claim of tortious interference with prospective business and economic opportunities. Id. at ¶¶ 78-85. The Seventh Count of the Counterclaim asserts a conspiracy to tortiously interfere with prospective business.  Id. at ¶¶ 86-94.  Plaintiff moves to dismiss each of the seven counts of the Counterclaim pursuant to FED. R. CIV. P. 12(b)(6) on the grounds that each fails to state a claim upon which relief can be granted. Defendant opposes the motion.

In the Third-Party Complaint, Seaway brings claims against Davidson Chevrolet Cadillac, Inc. ("Davidson"), a neighboring GM dealership in Watertown, New York. Seaway contends that Davidson "vigorously and repeatedly objected to and interfered with the proposed relocation of [Seaway]," Third-Party Compl. ¶ 8, and that GM refused Seaway's relocation request based upon Davidson's objections. Id. ¶ 6, 9.  The First Count of the Third-Party Complaint asserts a claim of tortious interference with contractual relations, contending that Davidson induced GM to breach the Agreement between GM

and Seaway.  Id. at ¶¶ 11-22.  The Second Count of Third-Party Complaint asserts a claim

of tortious interference with prospective business and economic opportunities.  Id. at ¶¶

23-30.  The Third Count of the Third-Party Complaint asserts that Davidson conspired with

GM to tortiously interfere with Seaway's prospective business and economic opportunities.

Id. at ¶¶ 31-39.  Davidson moves pursuant to Rule 12(b)(6) to dismiss the claims against

it. Seaway has also opposed this motion.

## II. STANDARD OF REVIEW

### a.  Motion to Dismiss Under Rule 12(b)(6)

A motion under FED. R. CIV. P. 12(b)(6) tests the legal sufficiency of the claims

pleaded in a case.  As the Supreme Court has held, a pleading "must only include 'a short

and plain statement of the claim showing that the pleader is entitled to relief.'"

Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002)(quoting FED. R. CIV. P. 8(a)).

"Such a statement must simply 'give the defendant fair notice of what the [pleader's] claim

is and the grounds upon which it rests.'" Id. (quoting Conley v. Gibson, 355 U.S. 41, 47

(1957)). "This simplified notice pleading relies on liberal discovery rules and summary

judgment motions to define disputed facts and issues and to dispose of unmeritorious

claims."  Id.  Thus, a pleading is sufficient if it gives the opponent fair notice of the claims

asserted, the grounds upon which they rest, and states claims upon which relief could be

granted. Id. at 514.

On a Rule 12(b)(6) motion, the Court accepts as true all factual allegations in the

complaint. See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,

507 U.S. 163, 164 (1993).  "Further, the court should construe the [pleading] liberally and

draw inferences from the [pleader's] allegations in the light most favorable to the

[pleader]." Tomayo v. City of N.Y., 2004 WL 137198, at * 5 (S.D.N.Y. Jan. 27, 2004)(citing

Desiderio v. National Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 202 (2d Cir. 1999)).  The

complaint must allege sufficient facts that would make the pleaded legal theories

plausible. See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1960 (2007); see also Iqbal

v. Hasty, 2007 WL 1717803, at *11 (2d Cir. June 14, 2007). However,

> "sweeping legal conclusions cast in the form of factual allegations" do not
> suffice to state a claim even at the Rule 12(b)(6) stage. 5A Charles Alan
> Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1990).
> "While the pleading standard is a liberal one, bald assertions and
> conclusions of law will not suffice." Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir.
> 1996)

Law Offices of Curtis V. Trinko, L.L.P. v. Bell Atlantic Corp., 309 F.3d 71, 74 (2d Cir.

2002).

In deciding a Rule 12(b)(6) motion, review "is generally limited to the facts and

allegations that are contained in the [challenged pleading] and in any documents that are

either incorporated into the [pleading] by reference or attached to the [pleading] as

exhibits." Blue Tree Hotels Inv., Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369

F.3d 212, 217 (2d Cir.  2004)(citations omitted).  Dismissal is appropriate only where "it

appears beyond doubt that the [pleader] can prove no set of facts in support of [its] claim

which would entitle [it] to relief," Phillip v. Univ. of Rochester, 316 F.3d 291, 293 (2d Cir.

2003)(citation omitted), or where the [pleading] fails as a matter of law. Phelps v.

Kapnolas, 308 F.3d 180, 187 (2d Cir. 2002).

4

## III.  DISCUSSION

### a.  First Count of the Counterclaim

The First Count of the Counterclaim seeks declaratory relief based on an alleged breach of the Agreement. In this regard, Defendant contends that Plaintiff's refusal to approve its relocation request is not factually based and is not predicated on a sound analysis of the marketplace and, therefore, breaches the Agreement. Counterclaim ¶ 44. Plaintiff seeks to dismiss the counterclaim on the grounds that: (1) "Seaway's request for declaratory judgment fails to set forth any contractual terms in dispute that could properly be the subject of a declaratory judgment," and (2) the declaratory judgment claim is duplicative of Count Four of the Counterclaim. GM's Mem. L. p. 4.

As discussed more fully below with regard to Count Four of the Counterclaim, *infra*,[1] Seaway points to specific provisions of the Agreement which it contends that GM breached.  See Counterclaim, Count 4.  These allegation are sufficient to put GM on notice of the basis of the claim and to create a justiciable controversy for declaratory relief. See MedImmune, Inc. v. Genentech, Inc., 127 S. Ct. 764, 771 (2007)("Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.")(quotation marks and citation omitted).

_____More important, however, is whether the First Count should be dismissed as duplicative of the Fourth Count.  Under the Declaratory Judgment Act, a district court "may

---

[1] Count Four of the Counterclaim is Seaway's breach of contract counterclaim and is discussed at point III(d) of this Decision and Order.

5

declare the rights and other legal relations of any interested party seeking such

declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); see

also Smith v. Metro. Prop. & Liab. Ins. Co. 629 F.2d 757, 759 (2d Cir. 1980).

Nonetheless, "although the availability of alternative remedies is not a bar to declaratory

relief, . . . the district court may in its discretion refuse declaratory relief if the alternative

remedy is more appropriate." Smith, 629 F.2d at 759 (citation omitted).  The Declaratory

Judgment Act "'confers a discretion on the courts rather than an absolute right upon the

litigant.'" Wilton v. Seven Falls Co., 115 U.S. 277, 287 (1995) (quoting Pub. Serv. Comm'n

of Utah v. Wycoff Co., 73 S. Ct. 236, 239 (1952)). "[T]he propriety of declaratory relief in a

particular case will depend upon a circumspect sense of its fitness informed by the

teachings and experience concerning the functions and extent of federal judicial power."

Pub. Serv. Comm'n of Utah v. Wycoff Co., 73 S. Ct. at 243.

        The Second Circuit has identified five factors a court must balance before

exercising its discretion to proceed with a declaratory claim: "(i) 'whether the judgment will

serve a useful purpose in clarifying or settling the legal issues involved'; (ii) 'whether a

judgment would finalize the controversy and offer relief from uncertainty'; (iii) 'whether the

proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata';

(iv) 'whether the use of a declaratory judgment would increase friction between sovereign

legal systems or improperly encroach on the domain of a state or foreign court'; and (v)

'whether there is a better or more effective remedy.'"  The New York Times Co. v.

Gonzales 459 F.3d 160, 167 (2d Cir. 2006)(quoting Dow Jones & Co., Inc. v. Harrods Ltd.,

346 F.3d 357, 359-360 (2d Cir. 2003)).  The district court has broad discretion in weighing

these five factors. <u>Times</u>, 459 F.3d at 165.

The applicable factors,[2] in aggregate, tilt against entertaining the First Count. Under the first and second factors, a declaratory judgment may fulfill part of the purpose of Defendant's action, but it would not resolve all of the claims asserted in Defendant's Counterclaim.  The Counterclaim is comprised of six additional claims, including alleged torts and purported violations of state and federal statutory law.  A declaratory judgment would not resolve these claims or provide Seaway with the monetary damages it seeks in the other claims.

The third factor also weighs against entertaining the claim for declaratory judgment. The First Count appears to be used as a means to counteract Plaintiff's original declaratory action and is no different from Defendant's counterclaim for breach of contract. In this regard, the First Count of the Counterclaim appears merely to be a strategic attempt to assert the breach of contract claim twice.

Finally, the fifth factor also weighs against entertaining a declaratory judgment claim. Seaway's breach of contract counterclaim (the Fourth Count), if successful, provides Defendant with a full and adequate alternative remedy. A declaratory judgment claim seeking a declaration that the Agreement was breached is duplicative of this breach of contract claim.  Thus, the Court declines to entertain the declaratory judgment counterclaim.  GM's motion to dismiss Count One of the Counterclaim is granted.

**b.  Second Count of the Counterclaim**

The Second Count of the Counterclaim alleges a violation of the Automobile

---

[2]The fourth factor is irrelevant for the purposes of this case.

Dealer's Day in Court Act ("ADDCA"), 15 U.S.C. §§ 1221- 1226.  The ADDCA provides a cause of action by an automobile dealer against an automobile manufacturer for "damages sustained . . . by reason of the failure of said automobile manufacturer . . . to act in good faith in performing or complying with any of the terms or provisions of the franchise [agreement], or in terminating, canceling, or not renewing the franchise with said dealer." 15 U.S.C. § 1222.  As used in the ADDCA,

> [t]he term "good faith" shall mean the duty of each party to any franchise [agreement] . . . to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party: *Provided*, that recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute a lack of good faith.

15 U.S.C. § 1221(e).

This definition of  "good faith" "has a narrow, restricted meaning" and is not to be construed liberally. Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp., 814 F.2d 90, 95 (2d Cir. 1987).   "[T]o succeed on [an ADDCA] claim, the dealer must demonstrate that the manufacturer exercised coercion or intimidation or made threats against the dealer to achieve an improper or wrongful objective." Empire Volkswagen,  814 F.2d at 95 (internal citations omitted).  "Failure to act in good faith under the [ADDCA] can be found only where there is evidence of a wrongful demand enforced by threats of coercion or intimidation." Id. (internal quotation and citation omitted).  "The existence of coercion or intimidation depends upon the circumstances arising in each particular case and may be inferred from a course of conduct." Fox Motors, Inc. v. Mazda Distributors (Gulf), Inc., 806 F.2d 953, 959 (10th Cir. 1986)(citation and quotation marks omitted).

GM argues that this counterclaim should be dismissed because there is no

allegation suggesting that GM made any wrongful demands that were enforced by threats of coercion or intimidation.  Seaway asserts that GM "coerced" Seaway by rejecting their relocation request, Counterclaim ¶ 47, and that GM's denial of its relocation request will serve to "terminate, either directly, indirectly or constructively, [Seaway's] franchise." Id.  ¶ 50.  Seaway contends that this action amounts to a violation of good faith under the ADDCA and supports a reasonable inference of coercion and intimidation. Id. at ¶ 51.  The Court disagrees.

The substance of Seaway's counterclaim is based on one conclusory statement: "GM has coerced and damaged [Seaway] by refusing, without sufficient reason, to permit [Seaway's] relocation."  Id. ¶ 47.  There is no allegation of any demand, let alone a wrongful demand, by GM.   Further, there is no factual allegation upon which a fact finder could conclude that GM's decision to deny the relocation was an exercise of intimidation or coercion.  Even assuming GM wanted to terminate Seaway's dealership, there is no allegation supporting a plausible claim of coercion or intimidation, or of threats of coercion or intimidation.

Moreover, the ADDCA does not proscribe coercion used to enforce a contractual provision. See Empire Volkswagen, 814 F.2d at 96-97 (use of coercion to enforce valid contractual provision not wrongful under the ADDCA)(citing Autowest, Inc. v. Peugeot, Inc., 434 F.2d 556, 561 (2d Cir. 1970)).  As the counterclaim makes clear, Seaway's claims raise a disagreement over whether the market can bear an additional dealership at Seaway's proposed site, and whether GM had the authority to make this determination

9

pursuant to the Agreement.  See Agreement, Article 4.4.2.[3]  Although the allegation that

GM did not provide sufficient reason to deny Seaway's relocation request may be enough

to establish a breach of contract, such a bald assertion is not sufficient to state a claim of

coercion, intimidation, or threats under the ADDCA.  See Pierce Ford Sales, Inc. v. Ford

Motor Co., 299 F.2d 425, 430 (2d Cir. 1962)("The conduct which the statute proscribes is

'coercion, intimidation, or threats of coercion or intimidation,' . . . 'good faith' is limited to

acts of 'coercion.'").   For these reasons, the Second Count of the Counterclaim is

dismissed.

### c.  Third Count of the Counterclaim

In the Third Count of the Counterclaim, Seaway asserts that GM violated the New

York Franchised Motor Vehicle Dealer Act, N.Y. Veh. & Traf. Law  §§ 460, et seq.

("FMVDA").   First, Seaway contends that GM violated § 466(1) of the FMVDA because,

"by its actions," "GM has directly or indirectly attempted to impose or imposed, and in bad

faith, unreasonable restrictions on [Seaway] relative to site-control and/or [Seaway's]

assertion of its legal rights to seek to relocate."  Counterclaim ¶ 58.  Second, Seaway

contends that GM violated § 463(2)(d)(1)[4] of the FMVDA because, "by its actions, and

upon information and belief," "GM has improperly attempted to put [Seaway] out of

business, constituting an unfair business practice and a wrongful attempt to actually or

constructively terminate [Seaway's] franchise, without notice or good cause."  Id. ¶ 59.

---

[3] The Dealer Agreement indicates that GM retained the authority to approve all dealer relocation requests "pursuant to its business judgment."  Agreement, Article 4.4.2.

[4] The Third Count of the Counterclaim asserts that GM's actions violated "§ 463(d)(1) of the [FMVDA]." Counterclaim ¶ 59.  There is no § 463(d)(1) of the FMVDA.  From the context of the allegation, and the arguments presented, the Court presumes that Seaway contends that GM violated § 463(2)(d)(1) of the FMVDA.

GM contends that neither allegation is sufficient to state an actionable claim under the FMVDA.

FMVDA § 466(1) provides:

It shall be unlawful for a franchisor directly or indirectly to impose unreasonable restrictions on the franchised motor vehicle dealer relative to transfer, sale, right to renew or termination of a franchise, discipline, noncompetition covenants, site-control (whether by sublease, collateral pledge of lease or otherwise), right of first refusal to purchase, option to purchase, compliance with subjective standards and assertion of legal or equitable rights with respect to its franchise or dealership.

N.Y. Veh. and Traf. Law § 466(1).

Seaway argues that if GM rejected its relocation request without considering the market factors, the denial amounts to an unreasonable restriction of site-control in violation of FMVDA § 466(1).  GM argues that, despite the fact that no case has considered the denial of a relocation request under the FMVDA § 466(1), the statute should be interpreted similarly to its federal counterpart, the ADDCA, and the cases rejecting claims based on relocation denials under the ADDCA should control here.

By the language of FMVDA § 466(1), the New York Legislature has provided for a statutory provision that prohibits a motor vehicle franchisor from "directly or indirectly impose[ing] unreasonable restrictions on the franchised motor vehicle dealer relative to . . . site-control."  Inasmuch as Seaway asserts that GM unreasonably restricted its site change request in order to put it out of business, Seaway asserts a plausible claim that GM violated FMVDA § 466(1).   At his stage of the proceedings, the counterclaim will not be dismissed.

FMVDA § 463(2)(d)(1) provides that it shall be unlawful for any franchisor:

> To terminate, cancel or refuse to renew the franchise of any franchised motor vehicle dealer except for due cause, regardless of the terms of the franchise. A franchisor shall notify a franchised motor vehicle dealer, in writing, of its intention to terminate, cancel or refuse to renew the franchise of such dealer at least ninety days before the effective date thereof, stating the specific grounds for such termination, cancellation or refusal to renew. In no event shall the term of any such franchise expire without the written consent of the franchised motor vehicle dealer involved prior to the expiration of at least ninety days following such written notice except as hereinafter provided.

N.Y. Veh. and Traf. Law § 463(2)(d)(1).

By its terms, FMVDA § 463(2)(d)(1) deals with terminations of motor vehicle franchises.   In the instant case, there are no allegations that GM terminated, canceled or refused to renew Seaway's franchise.  The allegation that GM is attempting to put Seaway out of business by denying its relocation request is speculative and asserts an injury that has not yet occurred.  GM's alleged conduct, even if proven, does not, at this time, amount to a violation of FMVDA § 463(2)(d)(1).  Accordingly, that much of the Third Count of the Counterclaim based upon FMVDA § 463(2)(d)(1) is dismissed.

Finally with regard to the Third Count of the Counterclaim, GM argues that Seaway's punitive damages request must be stricken because punitive damages are not available under the FMVDA.  Seaway has not responded to this particular argument.   For the reasons that follow, this portion of the motion is granted.

FMVDA § 469 permits an aggrieved franchised motor vehicle dealer to sue for "injunctive relief and damages." See  N.Y. Veh. & Traf. Law § 469.  "[S]ince Vehicle and Traffic Law article 17-A does not specifically provide for punitive damages, such damages could appropriately be awarded only if it were established that the defendant's actions were of such a degree as to constitute gross, highly immoral and wantonly dishonest

conduct, and were aimed at the public generally."  Kristal Dodge Corp. v. Chrysler Motors

Corp., 183 A.D.2d 814, 814 (2nd Dept. 1992)(quotation marks and citations omitted).

Here, as in Kristal Dodge Corp., "[t]he [Counterclaim] fails to allege . . . that the

defendant's conduct, even if lacking in some degree of good faith and fair dealing,

reached the level of moral culpability necessary to warrant an award of punitive damages."

 Id.  Therefore, the demand for punitive damages in the Third Count of the Counterclaim is

stricken.

### d.  Fourth Count of the Counterclaim

The Fourth Count of the Counterclaim alleges GM materially breached Articles 4.1

and 4.4.2 of the Agreement.  Article 4.1 outlines GM's purpose and intent in establishing a

network of authorized dealers who operate from approved locations.   It provides that

"those dealers must be appropriate in number, [and] located properly . . . to permit each

dealer the opportunity to achieve a reasonable return on investment if it fulfills its

obligations under its Dealer Agreement."  Agreement, Article 4.1.  Moreover, Article 4.1

indicates that GM "agrees to monitor marketing conditions . . . [including] General Motors

sales and registration performance, present and future demographic and economic

considerations, competitive dealer networks, the ability of General Motors existing dealers

to achieve the objectives stated above, the opportunities available to existing dealers . . . ."

Article 4.4.2, "Change in Location of Use of Premises," provides in pertinent part:

> If Dealer wants to make any changes in location(s) or Premises, . . .  Dealer
> will give General Motors written notice of the proposed change, together with
> the reasons for the proposal, for General Motors['] evaluation and final
> decision in light of dealer network planning considerations.  No change in
> location . . . will be made without General Motors['] prior written authorization
> pursuant to its business judgment.

Agreement, Article 4.4.2.

GM argues that nothing in the Agreement requires it to grant consent to a relocation request and, therefore, there is no viable breach of contract claim.   Seaway argues that GM is estopped from challenging the claims for breach of contract and the breach of implied covenant of good faith and fair dealing (discussed next) because the same issue based upon an identical contract was decided against GM in another case.   See Slip Opp. Clapp Auto Group, Inc. v. General Motors Corp., Civ. No. 4:06-cv-0023 (S.D. Ind. Sept. 7, 2006).

The estoppel argument is unavailing because, as Seaway acknowledges, the Clapp Auto Group, Inc. case is "still actively being litigated." Seaway's Mem. L., p. 15.  Thus, Clapp Auto Group, Inc. is not a final judgment, a necessary element to apply collateral estoppel.  See Transaero, Inc. v. La Fuerza Aera Boliviana, 162 F.3d 724, 731 (2d Cir. 1998).

Turning to the sufficiency of the pleading, the Court finds that Seaway has pleaded enough in the Fourth Count to survive the instant motion to dismiss.  While it seems unlikely that the claim could ultimately succeed given the discretion afforded GM to exercise its business judgment, see Love Pontiac, Cadillac, Buick, GMC Truck, Inc. v. General Motors Corp., 173 F.3d 851, 1999 WL 125562, at * 2 (4th Cir. Mar. 10, 1999)(unpublished decision),[5] Seaway has sufficiently pleaded that GM violated the

---

[5]GM contends that Love Pontiac, Cadillac, Buick, GMC Truck, Inc. should dictate the results on this motion. However, the Love case was decided pursuant to Rule 56 of the Federal Rules of Civil Procedure. Love Pontiac, Cadillac, Buick, GMC Truck, Inc., 1999 WL 125562, at * 2. In granting summary judgment, the Fourth Circuit in Love stated: "Defendants provided sound business judgment reasons for both the decision to award the Hilton Head franchise to Heritage rather than Love and the decision to diminish Love's [Area of Primary Responsibility.]" Id. Whether GM has provided "sound business judgment reasons" to deny Seaway's relocation request is a factual question beyond the scope of this motion.

Agreement in denying its request to relocate because (a) Seaway cannot achieve a

reasonable return on their investment at the present location even though Seaway has

fulfilled all of its obligations under the Agreement; (b) GM failed to take into account dealer

network planning considerations;[6] and (c) GM's stated rational for refusing to approve

Seaway's relocation request is not factually based and made in bad faith. Thus, the

portion of the motion is denied.

### e.  Fifth Count of the Counterclaim

In the Fifth Count of the Counterclaim, Seaway alleges that GM breached the

Agreement's implied covenants of good faith and faith dealing. GM moves to dismiss the

claim as duplicative of the Fourth Count alleging a breach of contract.  Seaway does not

challenge the argument that it is duplicative, but rather contends that GM is estopped from

contesting the claim because of the Clapp decision.

For the reasons discussed above, Clapp does not bar GM from contesting that it

breached the Agreement's implied covenants of good faith and faith dealing.  The claim,

however, is duplicative of the Fourth Count.  Michigan common law[7] recognizes an implied

covenant of good faith in every contract.  See Burton v. William Beaumont Hosp., 373 F.

Supp. 2d 707, 718 (E.D. Mich. 2005).  To the extent that Seaway contends that GM

breached the implied covenant of good faith of the Agreement by denying the relocation

request, the claim is subsumed in the Fourth Count.  "Michigan does not recognize an

---

[6]Seaway asserts that its proposed relocation would result in improved sales and services for customers, an increase market share for local dealers, enhanced brand image for Chevrolet, and increased sales for the neighboring dealer (Davidson Chevrolet Cadillac, Inc.).

[7]The Agreement's choice of law provision selects Michigan law. See Agreement, Article 17.2.  Thus, the Court applies Michigan law for claims premised upon a breach of the Agreement.

independent tort action for an alleged breach of a contract's implied covenant of good faith and fair dealing." Id.  Accordingly, Seaway is precluded from bringing an independent claim for breach of the implied covenant of good faith.  Count Five of the Counterclaim is dismissed.

### f.  Sixth Count of the Counterclaim

The Sixth Count of the Counterclaim alleges that GM "interfered with . . . [Seaway's] past, current and prospective business and economic opportunities and advantages." Counterclaim ¶ 79.  GM asserts that the claim is legally deficient because there is no plausible contention that GM interfered with any existing business relationships or any future relationships.  In its responding Memorandum of Law, Seaway contends that the Sixth Count is legally sufficient because GM's refusal to allow the relocation interfered with Seaway's ability to make "sales with the public," to "improve service capabilities for all customers," and "to attract new customers" and "expand market share." Def.'s Mem. of Law in Opp'n to Pl.'s Mot. 19 (citing Counterclaim at ¶¶ 29-30).

> Under New York law, in order to plead a valid claim of tortious interference with business relations, [the pleader] must allege that "(1) there is a business relationship between the plaintiff and a third party; (2) the defendant, knowing of that relationship, intentionally interferes  with it; (3) the defendant acts with the sole purpose of harming the plaintiff, or, failing that level of malice, uses dishonest, unfair, or improper means; and (4) the relationship is injured." Discover Group, Inc. v. Lexmark Int'l, Inc., 333 F. Supp. 2d 78, 86 (E.D.N.Y. 2004) (quoting Goldhirsh Group, Inc. v. Alpert, 107 F.3d 105, 108-09 (2d Cir. 1997)).  [The pleader] must further allege "relationships with specific third parties with which the [defendants] interfered," that those relationships were "in existence at the time of the interference," and "how the defendant[s] interfered in those relationships." [AIM Int'l Trading, L.L.C.  v. Valcucine S.p.A., 2003 U.S. Dist. LEXIS 8594, at * 22 (S.D.N.Y. May 22, 2003)].

Sedona Corp. v. Ladenburg Thalmand Co., 2005 U.S. Dist. LEXIS 16382, at *62-*63

16

(S.D.N.Y. 2005).[8]

The allegations in the Counterclaim are insufficient to state a viable claim of tortious interference with business relations.  The public and customers at large are far too general to constitute a specific third party.  Moreover, Seaway fails to allege that such relationships were in existence at the time of the alleged tort.  Indeed, attracting new customers and expanding market share presumes the absence of any existing relationship at the time of interference.  The Sixth Count of the Counterclaim is dismissed without prejudice to re-pleading.

### f.  Seventh Count of the Counterclaim

Seaway alleges in the Seventh Count of the Counterclaim that GM conspired with Davidson to tortiously interfere with Seaway's prospective business and economic opportunities and advantages.  In New York,

> [n]o action for civil conspiracy is cognizable in law. A plaintiff first must plead specific wrongful acts which constitute an independent tort. Satin v. Satin, 69 A.D.2d 761, 762, 414 N.Y.S.2d 570 (1st Dept. 1979). The pleading of a conspiracy may be made only to connect the actions of the individual defendants with an actionable injury and to establish that these acts flow from a common scheme or plan. Cunningham v. Hagedorn, 72 A.D.2d 702, 704, 422 N.Y.S.2d 70 (1st Dept. 1979).

Smukler v. 12 Lofts Realty, Inc., 156 A.D.2d 161,163-164 (1st Dept. 1989).

Inasmuch as Seaway as failed to plead a sufficient claim of tortious interference, the claim of conspiracy to commit tortious interference is also insufficient.  The claim is dismissed with without prejudice to re-pleading.

### g.   First Count of the Third-Party Complaint

The First Count of the Third-Party Complaint asserts a claim of tortious interference

---

[8]The parties agree that New York law applies to the tort claims asserted in the Counterclaim.

with contractual relations against Davidson.  See Third-Party Compl. ¶¶ 11-22.  Seaway

contends that Davidson was aware of the Agreement between GM and Seaway but

"wrongfully, intentionally and knowingly induced, procured and caused GM to breach [the

Agreement] . . .  without justification."  Id.  ¶¶ 14,18.

Davidson argues that the claim should be dismissed because Seaway has "failed to

allege any facts showing that General Motors breached the Dealer Agreement, nor has

Seaway referenced any contractual provisions which were breached by General Motors."

Davidson Mem. L. p. 4.  Seaway argues that the claim, as pled, is sufficient.

> "Where there is an existing, enforceable contract and a defendant's
> deliberate interference results in a breach of that contract, a plaintiff may
> recover damages for tortious interference with contractual relations even if
> the defendant was engaged in lawful behavior." NBT Bancorp Inc. v.
> Fleet/Norstar Fin. Group, Inc., 87 N.Y.2d 614, 664 N.E.2d 492, 496, 641
> N.Y.S.2d 581 (N.Y. 1996). The elements of a properly pled tortious
> interference with contract claim under New York law are: "(a) that a valid
> contract exists; (b) that a third party had knowledge of the contract; (c) that
> the third party intentionally and improperly procured the breach of the
> contract; and (d) that the breach resulted in damage to the plaintiff." Millar v.
> Ojima, 354 F. Supp. 2d 220, 229-30 (E.D.N.Y. 2005) (quoting Finley v.
> Giacobbe, 79 F.3d 1285, 1294 (2d Cir. 1996)). A plaintiff must also "identify
> a specific contractual term that was breached." Id. (quoting Risley v. Rubin,
> 272 A.D.2d 198, 708 N.Y.S.2d 377, 378 (1st Dep't. 2000)). Further,
> allegations of causation are required, as the plaintiff "must allege in the
> complaint that there would not have been a breach but for defendants'
> conduct." AIM Int'l Trading, L.L.C.  v. Valcucine S.p.A., 2003 U.S. Dist.
> LEXIS 8594, No. 02 Civ. 1363 (PKL), 2003 WL 21203503, at *4 (S.D.N.Y.
> May 22, 2003).

Sedona Corp., 2005 U.S. Dist. LEXIS 16382, at *61 - *62.

While some of the facts supporting the First Count of the Third-Party Complaint

(such as the specific provision(s) of the Agreement that Davidson purportedly caused GM

to breach) are not specifically set forth in the Third-Party Complaint, these contentions are

incorporated by reference from the Counterclaim. See Third-Party Compl. ¶ 19 ("As set

forth in the Counterclaim against GM, GM actually breached the [Agreement]), resulting in substantial economic harm to [Seaway].").  The Third-Party Complaint and the Counterclaim are part of a single document. <u>See</u> Answer, Counterclaim, and Third-Party Complaint [dkt. # 4].[9]  The allegations in the First Count of the Third-Party Complaint put Davidson on notice that the alleged breach underlying this claim is the same as alleged against GM in the Fourth Count of the Counterclaim. Third-Party Compl. ¶ 19. In addition, Seaway has pled (a) that a valid contract exists (the Agreement); (b) that Davidson had knowledge of the contract; (c) that Seaway intentionally and improperly procured the breach of the Agreement; and (d) that the breach resulted in damage to Seaway. <u>Id.</u> at ¶¶ 11-22.   Thus, the claim is sufficiently pled and that part of Davidson's motion to dismiss the First Count of the Third-Party Complaint is denied.

### h.  Second Count of the Third-Party Complaint

The Second Count of the Third-Party Complaint asserts a claim of  tortious interference with prospective business and economic opportunities. <u>See</u> Third-Party Compl. at  ¶¶ 23-30.  This claim essentially mimics the claim alleged against GM in the Sixth Count of the Counterclaim.  <u>Compare</u>  Third-Party Compl. at  ¶¶ 23-30 <u>with</u> Counterclaim at ¶¶ 78-85.   For the reasons set forth above with regard to the Sixth Count of the Counterclaim, the Second Count of the Third-Party Complaint is dismissed without prejudice to re-pleading.

### i.  Third Count of the Third-Party Complaint

In the Third Count of the Third-Party Complaint, Seaway alleges that Davidson

---

[9]The Court references to portions of the document by its individual parts because Seaway has chosen to enumerate the paragraphs in each part separately (<u>e.g.</u> the counterclaims and the claims in the Third -Party Complaint both start with paragraph # 1).

19

conspired with GM to tortiously interfere with Seaway's prospective business and economic opportunities and advantages. Again, the claim mimics the same claim brought against GM in the Counterclaim. Compare  Third-Party Compl. at  ¶¶ 31-39 with Counterclaim at ¶¶ 86-94.  For the reasons discussed above with regard to the Seventh Count of the Counterclaim, the Third Count of the Third-Party Complaint is dismissed without prejudice to re-pleading.

### j.  Claims for Injunctive Relief & Punitive Damages in Third-Party Complaint

Davidson moves to strike demands in the Third-Party complaint seeking injunctive relief and punitive damages.  Davidson contends that Seaway cannot prove irreparable harm such to entitle it to injunctive relief, and cannot demonstrate that Davidson's actions were motivated by morally culpable conduct directed at the public at large such to entitle it to punitive damages.

"The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." Weinberger v. Romero- Barcelo, 456 U.S. 305, 312 (1982).  Irreparable harm is injury for which a monetary award cannot compensate. JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir. 1990).  In the First Count of the Third-Party Complaint (the only remaining count in the Third-Party Complaint), Seaway asserts, *inter alia*, that Davidson's tortious interference with contractual relations caused Seaway to suffer harm "not quantifiable solely by money damages," including "the prospective loss of customers, business relationships and the franchise."  Third-Party Compl.  ¶ 21.  This allegation, if established, is sufficient to establish irreparable harm. See Freedom Holdings Inc. v.

Spitzer, 408 F.3d 112, 114-15 (2d Cir. 2005) ("[a]n anticipated loss of market share growth

may suffice as an irreparable harm"); Register.com Inc. v. Verio, Inc., 356 F.3d 393, 404

(2d Cir. 2004)(no abuse of discretion in finding injunction necessary to prevent loss of

business opportunities due to defendant's conduct); Jacobson & Co., Inc. v. Armstrong

Cork Co., 548 F.2d 438, 445 (2d Cir. 1977) (plaintiff "presented ample evidence to show a

threatened loss of good will and customers, both present and potential, neither of which

could be rectified by monetary damages"). Thus, the motion, in this regard, is denied.

"To sustain a claim for punitive damages in tort, one of the following must be

shown:  intentional or deliberate wrongdoing, aggravating or outrageous circumstances, a

fraudulent or evil motive, or a conscious act that willfully and wantonly disregards the

rights of another." Don Buchwald & Associates, Inc. v. Rich, 281 A.D.2d 329, 330 (2nd

Dept. 2001)(citations omitted).  "The limitation of an award for punitive damages to

conduct directed at the general public applies only in breach of contract cases, not in tort

cases . . . ." Id.  The Third-Party Complaint alleges sufficient conduct, if proven, to sustain

a claim for punitive damages under the First Count. See Third-Party Compl. ¶ 18.

Accordingly, the motion in this regard is also denied.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff General Motors Corporation's motion to

dismiss Defendant DealMaker, LLC, d/b/a Seaway Chevrolet's Counterclaim [dkt. # 11] is

**GRANTED IN PART and DENIED IN PART**.  In this regard,

- the First Count of the Counterclaim is **DISMISSED**;

- the Second Count of the Counterclaim is **DISMISSED**;

- that portion of the Third Count of the Counterclaim based upon § 463(2)(d)(1) of the New York Franchised Motor Vehicle Dealer Act is **DISMISSED**;

- the demand for punitive damages in the Third Count of the Counterclaim is **STRICKEN**;

- the Fifth Count of the Counterclaim is **DISMISSED**;

- the Sixth Count of the Counterclaim is **DISMISSED** without prejudice to re-pleading; and

- the Seventh Count of the Counterclaim is **DISMISSED** without prejudice to re-pleading.

The motion is denied in all other respects.

For the reasons set forth above, Third-Party Defendant Davidson Chevrolet Cadillac, Inc.'s motion to dismiss the Third-Party Complaint [dkt. # 15] is **GRANTED IN PART and DENIED IN PART**.  In this regard,

- the Second Count of the Third-Party Complaint is **DISMISSED** without prejudice to re-pleading;

- the Third Count of the Third-Party Complaint is **DISMISSED** without prejudice to re-pleading.

The motion is denied in all other respects.

**IT IS SO ORDERED.**

DATED: August 23, 2007

Thomas J. McAvoy
Senior, U.S. District Judge

22